IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

BILLY JAMES FLEMING,           )
                               )
       **Plaintiff,**        )
                               )
v.                             )   Civil Action No. 5:14-16419
                               )
INMATE MARVIN GARRETT,         )
*et al.*,                      )
                               )
       **Defendants.**       )

**PROPOSED FINDINGS AND RECOMMENDATION**

On May 14, 2014, Plaintiff,[1] acting *pro se* and formerly incarcerated at the Southern Regional Jail, in Beaver, West Virginia, filed his Application to Proceed Without Prepayment of Fees and Complaint claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[2] (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Inmate Marvin Garrett; (2) Administrator Michael Francis; (3) Ms. Meadows, Correctional Officer; (4) Nurse Bryan; (5) Doctor at Southern Regional Jail; and (6) Warden Gold. (Document No. 2, p. 4.) Plaintiff complains that Defendants violated his constitutional rights by failing to provide him with appropriate medical treatment and protection from a fellow inmate. (Id., p. 5.) Plaintiff explains that he was tasered by a police officer during his arrest on January 16, 2014. (Id.) Plaintiff states that upon his arrival at the Southern Regional Jail ["SRJ"], Nurse Bryan informed the officer that she needed "outside clearance

---

[1] The undersigned notes that Plaintiff is a frequent filer, who has initiated three other actions with this Court: (1) Civil Action No. 5:08-0267; (2) Civil Action No. 5:13-22991; and (3) Civil Action No. 5:14-16418.

[2] Because Plaintiffs are acting *pro se*, the documents which they have filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

from a hospital." (Id.) Plaintiff alleges that when the police officer refused to transport Plaintiff to the hospital, Ms. Meadows decided to "book" Plaintiff. (Id.) Plaintiff contends that Ms. Meadows stated to the police officer that "this is not the first time you've beat or tasered someone and we took them in." (Id.) Plaintiff acknowledges that an hour after arriving at SRJ, he was taken to medical where he was evaluated and an EKG was performed. (Id.) Plaintiff, however, complains that Nurse Bryan inquired as to whether Plaintiff was suicidal. (Id.) Plaintiff asserts that even though he failed to indicate any suicidal risk factors, Nurse Bryan placed him on suicide watch for five days. (Id.) Once Plaintiff was released from suicide watch, Plaintiff states that he reported to medical complaining of "pains in his chest." (Id.) Plaintiff alleges that he was then "unlawfully housed in medical for two days." (Id.) Plaintiff explains that he was housed in C4 upon his release from medical. (Id.) Plaintiff alleges that "[a]t that time, I got assaulted by [Inmate] Marvin Garrett." (Id.) Plaintiff acknowledges the Warden conducted an investigation and Plaintiff was "moved to another pod." (Id.) Plaintiff alleges that "[a]fter about a week, my roommate got a letter in the mail from the person I was assaulted by trying to get my roommate to beat me up." (Id.) Based on the foregoing, Plaintiff alleges that SJR staff acted with "cruel punishment" and "treated me like trash." (Id.) Plaintiff acknowledges that he is currently incarcerated at the Southwestern Jail and "now I'm getting medical treatment." (Id.)

    As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's Sick Call Requests (Id., pp. 9 - 10.); (2) A copy of the "Inmate Request/Grievance" and Response regarding Plaintiff's request for "power of attorney papers" (Id., p. 11.); (3) A copy of the "Inmate Request/Grievance" and Response regarding Plaintiff's request for the address of medical (Id., p. 12.); (4) A copy of the "Inmate Request/Grievance" and Response regarding Plaintiff's request for "release papers" (Id., p. 13.); (5) A copy of the "West Virginia Regional Jail & Correctional Facility Authority Inmate

Medical Co-Payments Authorization Form" (Id., p. 14.); (6) A copy of Plaintiff's letter-form Complaint as filed in Civil Action No. 5:14-16418 (Id., p. 15.); and (7) A copy of Plaintiff's "Inmate Request/Grievance" dated February 8, 2014 (Id., p. 16.).

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## DISCUSSION

1. **Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may

not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), *aff'd*, 54 Fed.Appx. 159 (4th Cir. 2003), *cert. denied*, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

4

were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court....The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate

5

that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

The West Virginia Regional Jail Authority makes available to its inmates a grievance procedure through which they may seek review of complaints related to the conditions of their confinement. Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the

procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

     In the Complaint, Plaintiff acknowledges that he did not fully exhaust his administrative remedies. (Document No. 2, p. 3.) Plaintiff contends that prison staff failed to properly respond to his administrative remedy request. (Id.) Specifically, Plaintiff states he filed grievance, but the Administrator failed to respond. (Id.) "Failure to receive a response is not an excuse for not moving to the next level of the grievance procedure." Nally v. King, 2013 WL 594709 * 3 (N.D.W.Va. Jan. 3, 2013); Cremeans v. Villers, 2012 WL 2359831 *3 (N.D.W.Va. May 29, 2012). In the instant case,

Plaintiff failed to consider the absence of a response as a denial and proceed to the next level. After Plaintiff allegedly failed to receive a response from the Administrator, Plaintiff filed the instant Complaint. Plaintiff, however, should have filed an appeal to the Chief of Operations when he did not receive a timely, written response from the Administrator. Thus, Plaintiff filed the Complaint without first exhausting his administrative remedies pursuant to the PLRA. The undersigned, therefore, recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust his administrative remedies. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Plaintiff's claims.

**2.     Eighth Amendment Claim:**

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." As a general matter, prohibited punishments include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 -

27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.")

### A.     *Medical Treatment:*

In order to maintain and prevail upon his Eighth Amendment claim, Plaintiff must allege in the first place and eventually establish a "sufficiently serious" deprivation of medical care and resulting "serious or significant physical or mental injury." In view of Plaintiff's allegations, the undersigned will assume that Plaintiff's medical condition is objectively serious. Respecting the second prong of the standard, it is clear that Plaintiff cannot establish that Defendants were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff appears to complain that Defendants refused to transport him to an "outside" hospital for medical treatment. Plaintiff, however, acknowledges that he was evaluated and an EKG was performed within approximately one hour after his arrival at SRJ. In response to Plaintiff's continuing complaints of "pain in his chest," Plaintiff was kept in medical for two days. The undersigned, therefore, finds that Defendants sufficiently treated Plaintiff's medical condition. If anything, Plaintiff simply disagrees with the appropriate course of treatment. An inmate's disagreement with his medical care or his course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Reading Plaintiff's documents liberally as required and considering facts as alleged and which might be implied therein, the undersigned finds that they cannot be read to allege indifference to his serious medical needs in violation of the Eighth Amendment of the United States Constitution. Accordingly, it appears beyond doubt that Plaintiff can prove no set of facts in support of the requisite second prong of his Eighth Amendment claim that he has received inadequate medical treatment.

### B.     *Failure to Protect:*

Next, Plaintiff contends that Defendants violated his constitutional rights by allowing him

to be assaulted by another inmate. Assuming Plaintiff's allegation as true, Plaintiff has failed to state a constitutional claim of failure to protect. In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk of serious harm. The undersigned finds that even though Plaintiff alleges that he was assaulted by an inmate, Plaintiff does not allege that he suffered any serious injury. See Atkinson v. Saar, 2009 WL 2843296 (D.Md. Aug. 28, 2009)(finding that plaintiff satisfied the first prong of the Farmer test where plaintiff injuries required emergency surgery and he was hospitalized for two weeks, and then spent two months in the Division of Corrections Hospital); Bowers v. United States, 2007 WL 2156249 (W.D.Va. July 26, 2007)(finding that plaintiff failed to allege facts demonstrating that he suffered serious injury where the assault only resulted in "a lot of redness, bruising and soreness" to plaintiff's head). Specifically, Plaintiff does not allege that he requested or required medical attention following the assault. The Supreme Court has recognized that " not . . . every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834, 114 S.Ct. at 1977.

     Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that each defendant knew of and disregarded an excessive risk to his health or safety. There is no allegation or indication that the attack on Plaintiff

was foreseeable. Plaintiff acknowledges that following the assault, an investigation was conducted and Plaintiff was transferred to another pod. Although Plaintiff alleges that Inmate Garrett attempted to have another inmate attack Plaintiff, Plaintiff states that he has now been transferred to the Southwestern Jail. The mere possibility that Plaintiff could have been assaulted by another inmate is insufficient. See Henslee v. Lewis, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); Langston v. Fleming, 38 F.3d 1213 (4th Cir. 1994)(*unpublished opinion*)(Prisoner failed to state a claim where he merely alleged that guards endangered his life by informing other inmates that he was charged with rape). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs (Document No. 1.), **DISMISS** Plaintiff's Complaint (Document No. 2.), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections

identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: May 23, 2014.

R. Clarke VanDervort
United States Magistrate Judge